**TEXAS DEPARTMENT OF PUBLIC SAFETY, Petitioner,**

v.

**COX TEXAS NEWSPAPERS, L.P., and Hearst Newspapers, L.L.C., Respondents.**

No. 09–0530.

Supreme Court of Texas.

Argued Sept. 15, 2010.

Decided July 1, 2011.

Michael P. Murphy, Asst. Solicitor General, James C. Ho, Gibson Dunn & Crutcher LLP, Dallas, David S. Morales, Office of the Attorney General of Texas, Deputy First Assistant Attorney General, Clarence Andrew Weber, Kelly Hart & Hallman LLP, Austin, Attorney General Greg W. Abbott, Attorney General of Texas, Peter Carl Hansen, Office of the Attorney General, Bill Davis, Office of the Attorney General of Texas, Office of Solicitor General, Barbara Bryant Deane, Assistant Attorney General, Brenda Loudermilk, Office of the Attorney General of Texas, Matthew T. Bohuslav, Office of the Attorney General, for Texas Department of Public Safety.

William Gerow Christian, Graves Dougherty Hearon & Moody, PC, Austin, for Cox Texas Newspapers, L.P.

Joseph R. Larsen, Sedgwick, Detert, Moran & Arnold, LLP, Houston, for Amicus Curiae Freedom of Information Foundation of Texas.

Chief Justice JEFFERSON delivered the opinion of the Court, joined by Justice HECHT, Justice GREEN, Justice GUZMAN, and Justice LEHRMANN.

Our common law protects from public disclosure highly intimate or embarrassing facts. We must decide whether it also protects information that substantially threatens physical harm. We conclude that it does. Both sides raise important questions, not just about safety but also about the public's right to know how the government spends taxpayer money. Those issues could not have been fully litigated under the standard that prevailed before today's decision. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

## I. Background

In separate requests, two reporters representing three newspapers asked the Department of Public Safety for travel vouchers from Governor Rick Perry's security detail. One request was limited to the Governor's out-of-state trips in 2001 and 2007; the other was not confined to a specific period of travel. Believing all of the documents to be excepted from disclosure under the Public Information Act (specifically Government Code section 552.101), DPS sought a ruling from the Attorney General's office.

DPS noted that it is responsible for staffing the governor's protective detail and that it does not publicly discuss security practices or the identity or numbers of officers so assigned. DPS offered to re-lease aggregated expense information, warning that releasing the vouchers themselves would "necessarily reveal the number of officers who traveled with the governor and his family," data that "would be valuable information for someone who intended to cause [the governor] harm."

Based solely on DPS's letter and inspection of a subset of the responsive documents, the Attorney General determined that release of the information would place the governor in imminent threat of physical danger. Accordingly, the Attorney General concluded that the information fell within a "special circumstances" aspect of common law privacy that required DPS to withhold the submitted information in its entirety under Government Code section 552.101.[1] Cox and Hearst, publishers of the newspapers in question, sued DPS, seeking a writ of mandamus to compel complete disclosure. See TEX. GOV'T CODE § 552.321(a). After a bench trial, the trial court found that public disclosure of the information in the vouchers would not put any person in imminent threat of physical danger or create a substantial risk of serious bodily harm from a reasonably perceived likely threat. The trial court ordered the clerk to issue a writ of mandamus compelling DPS to produce the vouchers in their entirety.

The court of appeals affirmed. 287 S.W.3d 390, 398. It held that the Attorney General's "special circumstances" exception conflicted with *Industrial Foundation of the South v. Texas Industrial Accident Board*, 540 S.W.2d 668, 685 (Tex.1976).

---

1. Twice before, the Attorney General ruled that similar vouchers had to be disclosed. *See* Tex. Att'y Gen. OR2004-4723; Tex. Att'y Gen. OR2002-0605. In those instances, however, the only exception DPS urged was Government Code section 552.108, which protects certain law enforcement information. *See* TEX. GOV'T CODE § 552.108. Because he believed that exception to be discretionary, however, the Attorney General ruled that it could not be considered in conjunction with section 552.022. *See id.* § 552.022 (making certain information in vouchers public unless expressly confidential under "other law"). DPS did not appeal either of those rulings.

*Id.* at 394. According to the court of appeals, *Industrial Foundation* "declared its two-part test to be the 'sole criteria' for the disclosure of information to be deemed a wrongful publication of private information under common law." *Id.* (quoting *Industrial Foundation,* 540 S.W.2d at 686). Because DPS conceded that the first prong of that test (that the information contains highly intimate or embarrassing facts) had not been satisfied, the court held that the vouchers could not be withheld based on the common law right of privacy. *Id.* at 395. The court also rejected DPS's claim that the Fourteenth Amendment to the United States Constitution barred disclosure of information that would create a substantial risk of serious bodily harm from a perceived likely threat. *Id.* at 398. The court observed that "[w]hether the privacy interests at issue here *should* merit protection under the PIA is a question for the legislature." *Id.*

We granted the petition for review to examine whether the public's right to information is subject to reasonable limitations when its production may lead to physical harm.[2] 53 Tex. Sup.Ct. J. 1023 (Aug. 20, 2010). DPS asserts that the vouchers are confidential under the common law and under Government Code section 418.176(a)(2).[3] We address each argument in turn.

## II. Does "other law" include a common law right to be free from physical harm?

■ The PIA guarantees access to public information, subject to certain exceptions. *See generally* Tex. Gov't Code ch. 552. Those exceptions embrace the understanding that the public's right to know is tempered by the individual and other interests at stake in disclosing that information. *See generally* Tex. Gov't Code ch. 552, subch. C. In 1999, the Legislature excluded certain categories of public information from the exceptions. *See id.* § 552.022. This core public information is currently[4] protected from disclosure only if it is " 'expressly confidential *under other law,*' meaning law other than Chapter 552 of the Government Code, which is the Public Information Act." *In re City of Georgetown,* 53 S.W.3d 328, 331 (Tex.2001) (quoting Tex. Gov't Code § 552.022(a)). "Other law" includes other statutes, judicial decisions, and rules promulgated by the judiciary. *Id.* at 332. "A law does not have to use the word 'confidential' to expressly impose confidentiality." *Id.* at 334.

The parties agree that the vouchers contain core public information.[5] *See* Tex. Gov't Code § 552.022(a)(3) (including "information in an account, voucher, or contract relating to the receipt or expenditure of public or other funds by a governmental body"). For this reason, that information is presently unaffected by the Legislature's passage, five days after the court of appeals' decision, of an amendment excepting public information from disclosure "if, under the specific circumstances pertaining to the [government] employee or officer, disclosure of the information would subject the employee or officer to a sub-

---

2. The Freedom of Information Foundation of Texas submitted an amicus curiae brief in support of Cox and Hearst.

3. DPS no longer makes an argument based on a constitutional right of privacy.

4. The Legislature has since amended section 552.022(a). Effective September 1, 2011, core public information may be withheld if it is confidential under either the PIA or other law. *See* Act of May 30, 2011, 82nd Leg., R.S., S.B. 602, § 2 (to be codified at Tex. Gov't Code § 552.022(a)).

5. The parties do not address, and we do not decide, what voucher information is "core" and what is not.

stantial threat of physical harm." Act of June 3, 2009, 81st Leg., R.S., ch. 283, § 4, 2009 Tex. Gen. Laws 742 (codified at Tex. Gov't Code § 552.151). Because this exception is in the PIA, it does not currently apply to core public information.[6] Tex. Gov't Code § 552.022(a).

We turn, then, to DPS's argument that "other law" includes a common law right to be free from physical harm. DPS urges an exception for cases in which there is an imminent threat of physical danger. DPS asserts that if the common law protects personal privacy, it must logically protect physical safety as well. Ensuring the physical safety of its citizens, says DPS, is the "primary concern of every government,"[7] and preventing disclosure that would threaten physical safety is deeply rooted in the common law. *See, e.g., Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627, 629 (Tex.1967) (observing that " '[t]he interest in freedom from intentional and unpermitted contacts with the plaintiff's person is protected by an action for the tort commonly called battery' " (quoting William L. Prosser, Law of Torts 32 (3d ed.1964))).

Freedom from physical harm is indeed a hallmark of our common law. One of our earliest reported cases involving battery was decided by the Supreme Court of the Republic of Texas. Eli Williams sued Jesse Benton for assault and battery. *Benton v. Williams,* Dallam 496, 496 (Tex. 1843). Benton filed a plea asserting that he should not have to answer the complaint because "Williams [was] of African descent, and not entitled by law to maintain his action." *Id.* at 496–97. The Court rejected that contention, even though the constitution at that time provided that the descendants of Africans were not entitled to the rights of citizens and "shall not be permitted to remain permanently in the republic without the consent of congress." *Id.* at 497. The Court held that insulating Benton from Williams's battery claim would be "against law, contrary to the spirit of our institutions, and in violation of the dictates of common humanity." *Id.* The Court affirmed the trial court's judgment against Benton. *Id.*

Our courts have, since then, consistently protected individuals' right to be free from physical harm.[8] Blackstone described three "absolute rights," one of which was "[t]he right of personal security," consisting of "a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation." 1 William Blackstone, Commentaries *125 (1769). The common law's recognition of an action for battery emerged as a means of "keep[ing] the peace by affording a substi-

6. The Legislature recently passed (although the Governor has not yet acted on) an amendment making vouchers confidential, but that amendment would not apply to the vouchers at issue in this case. Act introduced May 31, 2011, 82nd Leg., 1st C. S., S.B. 1, art. 79A (to be codified at Tex. Gov't Code ch. 660).

7. *United States v. Salerno,* 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

8. *See, e.g., Operation Rescue–Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.,* 975 S.W.2d 546, 564 (Tex.1998) (holding that "protecting the health and safety of clinic patients is a compelling state interest justifying restrictions on the demonstrations"); *see also* Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 5 (stating that "[a]n actor who intentionally causes physical harm is subject to liability for that harm"); *cf. G., C. & S.F. R'y v. Styron,* 2 Posey 275, 276–77 (Tex. Comm'n App. 1883) (not precedential) (noting that the common law recognized actions for injuries " 'to the *absolute rights* of persons, as for assaults, batteries, wounding, injuries to the health, liberty and reputation' " (quoting 1 Chitty On Pleadings 60)(emphasis added)).

tute for private retribution," [9] and we have recognized common law battery claims for more than a century. *See, e.g., Sargent v. Carnes,* 84 Tex. 156, 19 S.W. 378, 378 (1892) (affirming judgment on plaintiff's assault and battery claim). Protection from physical harm is thus more firmly entrenched in our common law than the right of privacy, a relative newcomer. W. PAGE KEETON, ET AL., THE LAW OF TORTS 849 (5th ed.1984)(noting that "[p]rior to the year 1890, no English or American court ever had granted relief expressly based upon the invasion [of the right of privacy]"). Indeed, we did not formally recognize the privacy tort until 1973, although our courts of civil appeals had hinted at it previously.[10]

Nonetheless, thirty-five years ago, we held that the common law privacy protection exempted documents from disclosure under the PIA. *Indus. Found.,* 540 S.W.2d at 686. We have never addressed

whether the common law right to be free from physical harm applies as well. We conclude that it does.

The Legislature has recognized the importance of protecting physical safety, notwithstanding the mandate that courts construe the PIA in favor of disclosure. *See* TEX. GOV'T CODE § 552.001(b). Several PIA exceptions are grounded in a concern for physical safety, and the Legislature's swift passage of an exception for information that would pose a "substantial threat of physical harm" confirms the primacy of this interest.[11]

Additionally, since the 1970s, the attorney general has applied a "special circumstances" exception to disclosure in over 230 cases. Often, these special circumstances included situations in which disclosure would place individuals in danger of physical harm.[12] The Attorney General

9. W. PAGE KEETON, ET AL., THE LAW OF TORTS 41 (5th ed.1984).

10. *See Billings v. Atkinson,* 489 S.W.2d 858, 860 (Tex.1973) (holding, for the first time, that "an unwarranted invasion of the right of privacy constitutes a legal injury for which a remedy will be granted"); *Milner v. Red River Valley Pub. Co.,* 249 S.W.2d 227, 229 (Tex.Civ. App.-Dallas 1952, no writ) (refusing to allow recovery for violation of right of privacy, because it was "not ... recognized under the common law, as it existed when we adopted it," but noting that other actions (such as penalties for libel and eavesdropping) provided some protection).

11. *See, e.g.,* TEX. GOV'T CODE §§ 552.108 (exempting information held by a law enforcement agency or prosecutor if it involves a threat against a peace officer), 552.1176 (making home address, phone number, and social security number of Texas lawyers and judges confidential), 552.119 (making photographs of peace officers confidential), 552.127 (excepting identifying information from participants in neighborhood crime watch organizations), 552.151 (excepting certain information from disclosure if it would pose a "substantial threat of physical harm");

*see also* House Comm. on State Affairs, Bill Analysis, Tex. H.B. 1237, 80th Leg., R.S. (2007) (noting that release of attorney personal information may "subject attorneys including current and former state and federal judges and prosecutors and their family members to harm relating to their personal safety or possible identity theft"); House Comm. on State Affairs, Bill Analysis, Tex. H.B. 273, 75th Leg., R.S. (1997) (commenting on "threats and acts of retaliation against the members of [neighborhood crime watch organizations]"); House Comm. for Public Safety, Bill Analysis, Tex. H.B. 474, 70th Leg., R.S. (1987) (noting that routine release of peace-officer photographs endangers officers' lives).

12. *See, e.g.,* Tex. Att'y Gen. OR2008–03289 (holding that home address, telephone number, and other identifying information relating to a Dallas Area Rapid Transit employee fell within the special circumstances exception, as information was requested by a former employee who had threatened that individual); Tex. Att'y Gen. OR2008– 01570 (determining that special circumstances justified withholding information, as city showed that former employee had

has described the exception as covering a "very narrow set of situations in which release of the information"[13] would cause someone to face "an imminent threat of physical danger." Tex. Att'y Gen. ORD1977–0169, at 6. It must be "more than a desire for privacy or a generalized fear of harassment or retribution." *Id.*

The court of appeals held that the Attorney General's "special circumstances" exception conflicted with *Industrial Foundation,* in which we said that the "sole criteria" for determining whether information was exempt from disclosure as "confidential by judicial decision" was whether the information was of legitimate public concern and whether its publication would be highly objectionable to a reasonable person. 287 S.W.3d at 394 (citing *Industrial Foundation,* 540 S.W.2d at 686). That is an accurate statement for assessing matters involving that branch of the *invasion-of-privacy* tort (the only exception at issue in *Industrial Foundation* ), but not for other matters that are confidential under judicial decision. *See, e.g., Ctr. for Econ. Justice v. Am. Ins. Ass'n,* 39 S.W.3d 337, 348 (Tex.App.-Austin 2001, no pet.) (determining that because the "[c]ommon law protects information that meets the traditional six-factor test for trade-secret protection," information was excepted from disclosure under the PIA). The court of appeals' holding is understandable, given that the Attorney Gener-

al has characterized the "special circumstances" exception as falling under the common law privacy umbrella. *See, e.g.,* Tex. Att'y Gen. OR2005–07052, at 6 (noting that "information also may be withheld under section 552.101 in conjunction with common law privacy upon a showing of certain 'special circumstances' "). But freedom from physical harm is an independent interest protected under law, untethered to the right of privacy.

The privacy interest protects against four distinct kinds of invasions (intrusion upon seclusion, public disclosure of private facts, false light publicity, and appropriation); physical harm is not among them.[14] KEETON, THE LAW OF TORTS 40, 851 (noting that privacy is "not one tort, but a complex of four"). We have characterized privacy as "the right of an individual to be left alone, to live a life of seclusion, to be free from unwarranted publicity." *Billings v. Atkinson,* 489 S.W.2d 858, 859 (Tex.1973) (citing 77 C.J.S. Right of Privacy § 1). By contrast, the common law right to be free from physical harm is an interest in personal integrity, distinct from that covered by the privacy interest. KEETON, THE LAW OF TORTS 40.[15] It is integral to a civil society. Although mischaracterized as a privacy related exception, the "special circumstances" doctrine protects the right we have long recognized at common law.

■ Both the legislative and executive branches have recognized that, as valuable

---

made threatening statements to city staff); Tex. Att'y Gen. OR2004–10845 (holding that special circumstances justified withholding identity of alleged crime victim due to potential threat to victim's safety); Tex. Att'y Gen. ORD1977–0169 (holding that employees' addresses could be withheld because employees showed that their lives would be endangered if the information was disclosed).

**13.** Tex. Att'y Gen. OR2004–10845, at 2.

**14.** As we noted in *Industrial Foundation,* the United States Supreme Court has also recognized a constitutional right of personal privacy in certain situations. *Indus. Found. of the South v. Tex. Indus. Accident Bd.,* 540 S.W.2d 668, 679 (Tex.1976).

**15.** *See also Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627, 629 (Tex.1967) (describing battery as protecting "[t]he plaintiff's interest in the integrity of his person") (quoting PROSSER, LAW OF TORTS 32 (3d ed.1964)).

as the right to public information is, a person's physical safety supersedes it. Those branches are not alone. Our common law protects—and has always protected—that interest, making such information confidential. We must decide, then, the appropriate standard for assessing whether disclosure would violate that interest. While we are not bound by the Legislature's policy decisions when we consider protections afforded by the common law, "the boundaries the Legislature has drawn do inform our decision." *Ford Motor Co. v. Miles,* 967 S.W.2d 377, 383 (Tex.1998); *see also Austin v. HealthTrust, Inc.,* 967 S.W.2d 400, 403 (Tex.1998). We conclude that the "substantial threat of physical harm" standard enunciated by the Legislature appropriately describes the interest protected under the common law, and information may be withheld if disclosure would create a substantial threat of physical harm. *See* TEX. GOV'T CODE § 552.151. We next examine that standard in light of the record produced at trial.

■ The trial court heard testimony from witnesses and reviewed the relevant documents and other exhibits. Although DPS proferred categories of lump sum expenses, showing amounts spent on airfare, lodging, meals, car rental, and related matters, it argued that disclosing the vouchers themselves would give those intent on harming the governor the means to accomplish that goal. DPS contended that the information revealed travel patterns, the number and placement of DPS officers on the detail, and how far in advance officers visit a location prior to the governor's arrival. The publishers presented evidence that the itemized vouchers and related documents disclose more information (and are more valuable to taxpayers, who fund the travel) than do line items with lump sum totals. The trial court concluded, categorically, that "public disclosure of

the information in the vouchers requested by Cox and Hearst would not put any person in an imminent threat of physical danger or create a substantial risk of serious bodily harm from a reasonably perceived likely threat"—the standard for the Attorney General's "special circumstances" test and the constitutional exception urged by DPS, respectively. This determination is close, but not identical, to the standard we announce today for the common law right of physical safety.

We have remanded a case to the trial court when we have changed our precedent or when the applicable law has otherwise evolved between the time of trial and the disposition of the appeal. *See, e.g., Twyman v. Twyman,* 855 S.W.2d 619, 626 (Tex.1993) (remand in interest of justice because case was tried on legal theory overruled by Court); *Caller–Times Publ'g Co., Inc. v. Triad Commc'ns, Inc.,* 826 S.W.2d 576, 588 (Tex.1992) (remand in interest of justice because Court announced new liability standard). We have also remanded for a trial court to determine "in light of [our] opinion, whether any of the information should be withheld from disclosure because confidential." *Indus. Found.,* 540 S.W.2d at 686. Here, our decision recognizes, for the first time, a common law physical safety exception to the PIA. And even though the interest protected under that exception is well-established in our law, we have never before addressed whether or how it applies to the PIA. We conclude that a remand is appropriate.

On remand, the trial court must closely examine each of the disputed documents. DPS is likely correct in one sense: disclosure of *some* of the information in the vouchers may create a substantial threat of physical harm because it reveals specific details about the number of officers assigned to protect the governor, their gen-

eral location in relation to him, and their dates of travel. Indeed, the vouchers divulge the number of officers the DPS deemed necessary for the governor's security, the specific location (hotel and room number) where the officers resided when providing that security, and the identity of each officer the Department assigned to the governor's protection. Because the past is prologue, at least when it reveals protocol DPS has implemented for ensuring the safety of government officials, we cannot agree that information from prior trips could not be used to inflict future harm.

But this may not justify withholding all but the ultimate dollar figure for trips abroad, as DPS proposes. In this respect, the publishers' request has merit: the documents themselves provide a more complete picture of how taxpayer money is spent than do the general categories and totals produced by DPS. This fact was not lost on the Legislature, which categorized certain information in vouchers as core public information. *See* TEX. GOV'T CODE § 552.022(a). And we agree with the trial court that the public has a legitimate interest in how public money is spent on official state business. The dividing line between disclosure and restraint must be determined by proof. To the extent DPS can show, with detailed evidence or expert testimony, that revelation substantially threatens harm—as it has with respect to the number of guards protecting the governor—then the information at issue may be withheld. A certain amount of deference must be afforded DPS officers and other law enforcement experts about the probability of harm, although vague assertions of risk will not carry the day. But the public's right to "complete information" [16] must yield when disclosure of that information would substantially threaten

physical harm. On remand, the trial court must ascertain, under this standard, what information may be confidential and what must be disclosed. Accordingly, we remand the case for a new trial.

A brief word in response to the concurrence. The concurrence says our holding would "establish judge-made exceptions to the PIA's required disclosure of information to the public, contradicting the unanimous determination in our precedent, *Industrial Foundation of the South v. Texas Industrial Accident Board.*" 343 S.W.3d at 121. But *Industrial Foundation* recognized that the PIA is subject to the common law and itself adopted a "judge-made" exception to disclosure: the right of privacy. *Indus. Found.*, 540 S.W.2d at 683 (holding that right of privacy acknowledged in *Billings v. Atkinson* was "the type of information which the Legislature intended to exempt from mandatory disclosure" under the PIA provision excepting matters confidential by judicial decision). We squarely held in *In re Georgetown* (a case involving core public information) that "other law" included not just statutes and rules, but "judicial decisions." *Georgetown*, 53 S.W.3d at 332. To reach that holding, we relied on a United States Supreme Court decision that concluded the phrase "all other law," by itself, "indicates no limitation" and did not allow any distinction "between positive enactments and common-law rules of liability." *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 128–29, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991), *quoted in Georgetown*, 53 S.W.3d at 333. The concurrence's position is not unlike the *Georgetown* dissent's, a position we rejected then. We reject it again today. *Compare* 343 S.W.3d at 124 (suggesting that " 'other law' must mean other statutory law where

16. TEX. GOV'T CODE § 552.001(a).

the Legislature has declared certain information confidential"), *with Georgetown*, 53 S.W.3d at 339 (Abbott, J., dissenting) (suggesting that only the Legislature could promulgate laws, so that rules of procedure could not be "other law").

■ The concurrence argues that because the information itself may not implicate privacy concerns, it cannot be protected from disclosure as "expressly confidential under other law." TEX. GOV'T CODE § 552.022. But information does not exist in a vacuum. When disclosure carries with it a serious risk of bodily harm, we cannot ignore those consequences when deciding whether common law protections apply. *Cf. U.S. Dep't of State v. Ray*, 502 U.S. 164, 177, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) (considering retaliatory action that would occur if information was disclosed).[17] Our common law protects individuals from physical harm, and, consistent with the PIA,[18] that protection extends to the disclosure of information that substantially threatens such harm.

### III. Are the vouchers confidential under Government Code section 418.176?

Finally, DPS contends the documents are exempt from disclosure under Government Code section 418.176. That statute, passed in 2003,[19] makes certain information relating to emergency response providers confidential. The law provides, in pertinent part:

Information is confidential if the information is collected, assembled, or maintained by or for a governmental entity for the purpose of preventing, detecting, responding to, or investigating an act of terrorism or related criminal activity and:

(1) relates to the staffing requirements of an emergency response provider, including a law enforcement agency, a fire-fighting agency, or an emergency services agency;

(2) relates to a tactical plan of the provider; or

(3) consists of a list or compilation of pager or telephone numbers, including mobile and cellular telephone numbers, of the provider.

TEX. GOV'T CODE § 418.176(a).

DPS contends that section 418.176 is "other law" making the vouchers confidential. *See id.* 552.101. Cox and Hearst argue that the vouchers do not meet section 418.176's requirements and, moreover, that DPS waived the issue by failing to raise it in the trial court and the court of appeals. Because we are remanding for a new trial, DPS may pursue this argument in the trial court in the first instance. *Cf. Kallam v. Boyd*, 232 S.W.3d 774, 776 (Tex. 2007) (deferring decision on issue until it had been fully litigated below " 'so that we will have the benefit of developed arguments on both sides and lower court opinions squarely addressing the question' " (quoting *Yee v. City of Escondido*, 503 U.S.

---

17. *See also* Michael Hoefges et al., *Privacy Rights Versus FOIA Disclosure Policy: The "Uses and Effects" Double Standard in Access to Personally–Identifiable Information in Government Records*, 12 WM. & MARY BILL RTS J. 1, 7 (2003) (noting that "the [Supreme] Court considers derivative uses and secondary effects of disclosure on the privacy side as a matter of course").

18. TEX. GOV'T CODE § 552.022(a).

19. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 1312, § 3, 2003 Tex. Gen. Laws 4809, 4813.

519, 538, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992))).

## IV. Conclusion

We reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion. TEX.R.APP. P. 60.2(d).

Justice WAINWRIGHT delivered a concurring opinion, joined by Justice JOHNSON.

Justice MEDINA and Justice WILLETT did not participate in the decision.

Justice WAINWRIGHT, joined by Justice JOHNSON, concurring in the judgment.

The media requested vouchers that detail expenditure of public funds for the governor's security detail when he travels. Because it concerns how the government spends taxpayer monies, the information in vouchers is not just "public information" under the Public Information Act (PIA), it is "core" public information, with a greater emphasis on disclosure than other public information. *See* TEX. GOV'T CODE § 552.022(a). The Texas Department of Public Safety argues that the information should not be disclosed, even though it is core public information, because of the risk to the safety of elected officials. There is no express exception to disclosure for this core public information. This tension resulted in this Court concluding that it may establish judge-made exceptions to the PIA's required disclosure of information to the public, contradicting the unanimous determination in our precedent *Industrial Foundation of the South v. Texas Industrial Accident Board. See* 540 S.W.2d 668, 682 (Tex.1976) (plurality op.) ("We decline to adopt an interpretation which would allow the court in its discretion to deny disclosure even though there is no specific exception provided...."); *Id.* at 692 (Reavley, J., dissenting) ("It was not the intention of the Legislature to turn over the administration of the Open Records Act to the judiciary."). The Court concludes that it is "not bound by the Legislature's policy decisions" in deciding common law exceptions to the statute, leaving no apparent boundaries on new common law exceptions to the legislated disclosure requirements in the PIA that courts may now create. 343 S.W.3d 112.

Further complicating the case, the trial court made an express finding that "[p]ublic disclosure of the information in the vouchers requested by [the media representatives] would not put any person in an imminent threat of physical danger or create a substantial risk of serious bodily harm from a reasonably perceived likely threat." The Court acknowledges a lack of expertise in such matters and credits the law enforcement testimony that disclosure of the vouchers would create a threat of injury. While I agree with the Court's strong desire to keep public officials safe, once the Legislature weighed in, the question of keeping public information from the people is not one for the courts. The Court should not judicially create an exception to disclosure that contradicts the Legislature's expressed intent in the PIA. I cannot join the Court's opinion, but because I believe that DPS argued, and the trial court accepted, an exception not allowed by law, I would remand in the interests of justice for the trial court to consider other exceptions grounded in "other law."

## I. Background

The Public Information Act contains a comprehensive scheme arming the public with statutory mandates for the government to disclose information "collected, as-

sembled, or maintained under a law or ordinance" or in connection with business by or for a governmental body, and it is to be liberally construed to grant requests for information. TEX. GOV'T CODE §§ 552.001(b), .002(a). All such information is subject to disclosure unless it is either later excepted from the definition of "public information" or it falls under an exception to disclosure. *See id.* §§ 552.101–.151; *cf., e.g.,* TEX. ELEC.CODE § 13.004(c) (defining certain voter registration information as confidential and not "constitut[ing] public information" for purposes of the PIA). "Public information" may be excepted from disclosure under Subchapter C, or may be prohibited from disclosure if the information is deemed "confidential." TEX. GOV'T CODE §§ 552.007, .101, .352.

There is, however, another level of "public information." Members of this Court and the Attorney General's Office have, in the past, called it "super public" information; today the Court calls it "core public information." *See* 343 S.W.3d 112; *In re City of Georgetown,* 53 S.W.3d 328, 341 (Tex.2001) (Abbott, J., dissenting); Tex. Att'y Gen. OR2004–7388. This is the type of public information at the core of government functions, generally relating to laws actually enacted, decisions of the judiciary, votes of the Legislature, and how the government spends the people's money. *See* TEX. GOV'T CODE §§ 552.022, .0221, .0225. As such, core public information is not subject to the routine exclusions in Subchapter C, but may be withheld from the public only if the information is "expressly confidential under other law." *Id.* § 552.022(a). This rule was important enough that the Legislature specifically commanded courts to comply with it. Section 552.022(b) mandates that "[a] court in this state may not order a governmental body or an officer for public information to withhold from public inspection any cate-

gory of public information described by Subsection (a) or to not produce the category of public information for inspection or duplication, unless the category of information is expressly made confidential under other law." *Id.* § 552.022(b).

Reporters representing the *Austin American–Statesman, San Antonio Express–News,* and the *Houston Chronicle* sent requests to DPS officials. One reporter requested "travel vouchers for Gov. Rick Perry's security detail for all trips out of state during two time periods. The first time period is January through December 2001. The second time period is January through June 2007." Another requested "access to or copies of travel vouchers for Gov. Rick Perry's security detail." The parties acknowledge that these requests include "information in an account, voucher, or contract relating to the receipt or expenditure of public or other funds by a governmental body." *See id.* § 552.022(a)(3). As such, the information requested is core public information. *Id.* § 552.022.

## II. Disclosure of Core Public Information as "Expressly Confidential Under Other Law"

Compared to the dozens of exceptions for disclosure of "regular" public information, there is only one exception to the PIA's mandated disclosure of core public information—if it is "expressly confidential under other law." *Id.* The text of section 552.022's narrow exclusion contains three facial requirements: the information must be "confidential," such designation that the information is confidential must be "express," and the source of the confidential designation must be "other law." This requirement was put in place by a 1999 amendment. *See* Act of May 25, 1999, 76th Leg., R.S., ch. 1319, § 5, 1999 Tex. Gen. Laws 4501. Prior to the amendment,

section 552.022 of the Government Code merely recognized the types of information enumerated in section 552.022 were "public information." It recognized that vouchers were public information "if the information is not otherwise made confidential by law." *Id.* But the amendment added language to the introductory clause, requiring that all types of core public information enumerated in section 552.022 are public information "and not excepted from required disclosure under this chapter unless they are expressly confidential under other law." *Id.*[1] This 1999 amendment was heralded as a "true success" in providing a "citizen ... full and complete information regarding official acts of those who represent them and the affairs of government." Rick L. Duncan, *No More Secrets: How Recent Legislative Changes Will Allow the Public Greater Access to Information,* 1 Tex. Tech. J. Tex. Admin. L. 115, 133 (2000). We should give effect to all the words in a statute, and to changes in the words of legislative acts. *See Indep. Life Ins. Co. of Am. v. Work,* 124 Tex. 281, 77 S.W.2d 1036, 1039 (1934). As discussed below, the Court's opinion does not, as it ignores the "express," "confidential," and "other law" requirements of the statute.

### A. Other Law

"Other law" means law other than the Public Information Act. *City of Georgetown,* 53 S.W.3d at 332–33. I disagree with the Court's assertion that "other law" exceptions to disclosure of core public information can mean "judicial decisions." 343 S.W.3d 112. The Court cites as authority for its holding the case of *In re City of Georgetown,* a case in which the Court examined whether rules in the Texas Rules of Civil Procedure regarding attorney-client privilege constituted "other law" under section 552.022. *Id.* (citing *City of Georgetown,* 53 S.W.3d at 332). In *City of Georgetown,* the Court held that because our enacted rules of court "have the same force and effect as statutes," and the rules were derived from previously enacted statutes, such rules constitute "other law" under section 552.022. 53 S.W.3d at 332 (quotation omitted). The Court today misreads *City of Georgetown,* asserting that it serves as the basis for creating common law exceptions to the PIA. The Court cites no other Texas authority for this holding.

Other provisions in the PIA also indicate that judicial decisions should not be "other law" for the purpose of the section. *See Molinet v. Kimbrell,* —— S.W.3d ——, 2011 WL 182230 (Tex.2011) (noting that we examine the "entire act" to glean the meaning of a statute's text (citations and quotations omitted)). In section 552.101 of the PIA, the Legislature excepted from disclosure information that is "considered to be confidential by law, either constitutional, statutory, or by judicial decision." Tex. Gov't Code § 552.101. This provision applies to "public information" defined and disclosable pursuant to section 552.021, and not to the core public information delineated in section 552.022. If we were to interpret "other law" in section 552.022 to include law made pursuant to a judicial decision, we would effectively apply section 552.101's "judicial decision" exception to disclosure to core public information. This

---

1. Recently, the Texas Legislature amended section 552.022's "expressly confidential under other law" provision, and also added specific exceptions in the PIA for certain confidential information. *See generally* Act of May 20, 2011, 82nd Leg., R.S. (to be codified at Tex. Gov't Code chs. 51, 552). After the effective date, core public information may be withheld from disclosure if it is "made confidential under this chapter or other law." *Id.* § 2 (to be codified at Tex. Gov't Code § 552.022). This amendment does not apply to the case at bar, because the statute's effective date is September 1, 2011. *Id.* § 41.

is contrary to the Legislature's explicit statement that core public information is *"not excepted from required disclosure under this chapter,"* including section 552.101. *Id.* § 552.022 (emphasis added). The most logical reading, then, is that "other law" must mean other statutory law where the Legislature has declared certain information confidential,[2] or rules of court drafted by this Court that are commensurate with statutes. *See City of Georgetown,* 53 S.W.3d at 333.

The Court argues that the "other law" in this case is the "individual['s] right to be free from physical harm," as manifested in the tort of battery. 343 S.W.3d 112. The Court posits that because physical safety is "the primary concern of every government," and the PIA protects private information, then it must surely protect physical safety as well. *Id.* at 115 (quoting *United States v. Salerno,* 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). The reasoning is a sound policy argument in drafting legislation. Elected officials should not be subjected to harm by dangerous persons whose task may be made easier through public information requests. But the policy decision of how to satisfy that objective is not ours. The Legislature has made nondisclosure of the core public information at issue dependent on it being specifically designated confidential by rules or statutes outside of the PIA.

Further, this Court has never held that other torts would protect the disclosure of core· public information under section 552.022. In *Industrial Foundation of the South v. Texas Industrial Accident Board,* we decided the scope of information protected by "judicial decision" under the predecessor to Government Code section 552.101. 540 S.W.2d at 683. This is not an interpretation of "other law" under section 552.022, and, as discussed above, the two provisions are not coterminous.

In *Industrial Foundation,* all members of the Court agreed that the scope of the "judicial decision" exception did not give the Court a blank check to create common law exceptions to the PIA. *Id.* at 681–82 (plurality op.). "It was not the intention of the Legislature to turn over the administration of the Open Records Act to the judiciary." *Id.* at 692 (Reavley, J., dissenting, joined by Steakley, Pope, and Denton, JJ.); *see also Tex. Comptroller of Pub. Accounts v. Att'y Gen. of Tex.,* —— S.W.3d ——, 2010 WL 4910163 (Tex.2010) (Wainwright, J., dissenting) ("[C]ourts do not have the discretion to classify information as confidential on an ad hoc basis; confidentiality of public information is to be determined by the terms of the Act."). As I discussed in *Texas Comptroller,* the Legislature limited our ability to create judicial exceptions to the PIA. *Id.* at ——. Thus, the Legislature's definition of the "judicial exception" includes only the privacy torts recognized at the time of *Industrial Foundation. See* 540 S.W.2d at 678–81. There was one such tort at that time-public disclosure of private facts. I would thus limit the scope of the "judicial decision" exception to that tort. My fundamental concern is the Court's willingness to create common law exceptions to the comprehensive disclosure scheme of the PIA, weakening the PIA in three consecutive opinions interpreting the Act—*City of Dallas v. Abbott,* 304 S.W.3d 380, 387 (Tex.

---

**2.** This is essentially the limited exception under the federal Freedom of Information Act. *See* 5 U.S.C. § 552(b)(3) (excluding from FOIA's reach "matters that are specifically exempted from disclosure by statute ... if that statute ... (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and specifically references § 552(b), if passed after 2009").

2010) (extending response periods by governmental entities to requests for public information when the request was unclear), *Texas Comptroller*, —— S.W.3d at —— (holding dates of birth "confidential" under "judicial decision" and excepting them from disclosure under the PIA), and this case, *DPS v. Cox.*

Immediately after the dispute over the disclosure of travel vouchers arose, the Legislature considered making such voucher information confidential.[3] But it did *not* declare vouchers from security details "confidential," nor did it except these vouchers from the definition of "public information" under 552.022(a). Instead, the Legislature passed what is currently codified as section 552.151 of the Government Code.[4] That section provides:

> Information in the custody of a governmental body that relates to an employee or officer of the governmental body is excepted from the requirements of Section 552.021 if, under the specific circumstances pertaining to the employee or officer, disclosure of the information would subject the employee or officer to a substantial threat of physical harm.

Tex. Gov't Code § 552.151 (to be recodified at Tex. Gov't Code § 552.152). The amendment applies only to information to be disclosed pursuant to section 552.021, *i.e.*, regular "public information." It is an exception in Subchapter C, which specifically does not apply to core public information, like information in the vouchers at issue in this case. The Court argues that the Legislature's "swift passage" of section 552.151 of the Government Code "confirms the primacy" of the government's interest in protection against physical harm. 343 S.W.3d 112. But the Legislature's intent is best manifested in what actually becomes law. *Molinet*, —— S.W.3d at —— ("The plain meaning of the text is the best expression of legislative intent unless a

---

3. Parallel bills in the Texas House and Senate during the current legislative session attempted to specifically make "a voucher submitted or to be submitted under [Chapter 660 of the Government Code] confidential and may not be disclosed under the PIA" if the voucher was for expenses incurred in protecting an elected official or the official's family. H.B. 3131, 82nd Leg. R.S., § 1 (introduced March 10, 2011); S.B.1923, 82nd Leg., R.S., § 1 (introduced April 29, 2011). Neither bill came to a vote before each bill's respective chamber during the regular session. During the special session in June 2011, Senate Bill 1 was amended to make vouchers or other reimbursement forms confidential for a period of eighteen months following the date of travel "if the reimbursement or travel expense incurred by a peace officer while assigned to provide protection for an elected official of this state or a member of the elected official's family." S.B. 1, 82nd Leg., 1st C.S., § 79A.01 (introduced May 31, 2011). Following the eighteen-month period, the vouchers "become subject to disclosure under Chapter 552 and are not excepted from public disclosure or confidential under that chapter or other law," with seven exceptions, including the personal safety exception. *Id.* During the eighteen-month period, agencies are required to submit expense summaries providing specified, detailed information. *Id.* The Legislature has provided that this Court will have "original and exclusive mandamus jurisdiction" over the construction, applicability, or constitutionality of the amendment, and the amendment applies only to vouchers created on or after September 1, 2011. *Id.; see also id.* § 80. The Governor has not yet taken action on the bill.

Because the vouchers at issue in this case are not covered by the new section, its interpretation is not before this Court.

4. The original enacting legislation added the exception as section 552.151. *See* Act of May 31, 2009, 81st Leg., R.S., ch. 283, § 4, 2009 Tex. Gen. Laws 742, 743 (codified at Tex. Gov't Code § 552.151). This session, the Legislature redesignated the section as section 552.152, effective September 1, 2011. *See* Act of May 5, 2011, 82nd Leg., R.S., S.B. 1303, § 27.001(20). For the sake of clarity, this opinion will refer to the provision as presently in force, section 552.151.

different meaning is apparent...."). The promulgation of section 552.151 demonstrates the opposite. Section 552.151 is not an exception to the mandated disclosure of core public information. The Court's opinion grafts the Legislature's test found in section 552.151 onto situations in which the Legislature unambiguously did not intend. The Court would rewrite section 552.151 to hold that such information is "excepted from the requirements of sections 552.021 *or 552.022* " and moves the section out of the PIA such that it can be considered "other law." 343 S.W.3d 112 (emphasis added). The Court should not by common law override a specific statutory mandate.

## B. Confidential

Even if "other law" may include judicial decisions and the common law, section 552.022 requires that the "other law" declare the information "confidential." "Confidential" may have a fluid meaning, such as "protected," "secured," or "safeguarded." *Cf. City of Georgetown,* 53 S.W.3d at 334 ("A law does not have to use the word 'confidential' to expressly impose confidentiality."). The Legislature has enacted a plethora of laws that deem certain information "confidential" for myriad purposes. *See Tex. Comptroller,* —— S.W.3d —— (Wainwright, J., dissenting) (noting that "no fewer than 100 Texas statutes classify information as confidential for purposes of the PIA"); *City of Georgetown,* 53 S.W.3d at 339–40 (Abbott, J., dissenting) (providing four examples of information

"expressly made confidential" in the Transportation Code, Education Code, and Family Code). Likewise, there are a number of tort actions, both statutory and common law, that recognize that certain types of information are private or confidential.[5] But in every instance, the *information itself* is the issue, and the statute, decision, rule, or crime exists to protect the information itself or a person who will be directly harmed by the information's release.

Once again, the Court creates a judicial exception to disclosure of information in the PIA based on a possible use of the information rather than the nature of the information itself. In *Texas Comptroller,* the Court, for the first time, considered derivative harm arising from the release of information—whether disclosure of birth dates of public employees, along with other information, could be used for identity theft. The Court held that such potential tortious use of the public information constituted grounds to withhold the information because it would constitute a "clearly unwarranted invasion of personal privacy." *Tex. Comptroller,* —— S.W.3d at ——. But the courts are not "free to balance the public's interest in disclosure against the harm resulting to an individual by reason of such disclosure." *Indus. Found.,* 540 S.W.2d at 681–82 (plurality op.). "This policy determination was made by the Legislature when it enacted the statute." *Id.* at 682. The Legislature granted the people's right to the information after con-

---

5. Examples include trade secrets, privilege, public disclosure of private facts, and gag orders during trial. *See In re Bass,* 113 S.W.3d 735, 739 (Tex.2003) (defining trade secrets); RESTATEMENT (THIRD) OF UNFAIR COMPETITION §§ 39, 40, 41 (similarly defining trade secrets and remedies available for protection of trade secrets); TEX.R. CIV. P. 193.3 (setting standards for asserting privileges in discovery); *In re E.I. DuPont de Nemours & Co.,* 136 S.W.3d 218, 222–23 (Tex.2004) (per curiam) (providing for mandamus relief for erroneous rulings on privileged documents); *Indus. Found. of the S. v. Tex. Ind. Accident Bd.,* 540 S.W.2d 668, 682–83 (Tex.1976) (plurality op.) (discussing the tort of public disclosure of private facts); *Davenport v. Garcia,* 834 S.W.2d 4, 10 (Tex.1992) (discussing a court's authority to issue gag orders).

sidering its potential uses and harms. The Court, apparently believing the Legislature did not sufficiently execute its task, finds a new common law exception to disclosure based on its own views of harm in the potential use of, on this occasion, core public information.

In *Texas Comptroller*, as here, the Court did not restrict itself to considering whether the actual release of the information (state employees' birth dates) was harmful, but rather whether, in the wrong hands and in combination with other information, such as Social Security numbers, state employees might be at higher risk for identity theft. *Tex. Comptroller*, —— S.W.3d ——. The harm was derivative, and the analysis allowed for post-hoc, judicially created exceptions to disclosure. For the same reasons as in *Texas Comptroller*, I believe the Court's analysis and application of derivative harm to create an exception to disclosure is inappropriate, particularly so because of the core public nature of the information at issue, and because the Court's rule could permit unfettered judicial discretion in declaring any information not subject to disclosure. Its discovery of this common law right may even inadvertently have the effect of creating some common law cause of action for "wrongful disclosure of information," and may have the potential to randomly and unnecessarily subject various government agencies and officers to criminal liability for simply disclosing what the Legislature determined, and the Court admits, is core public information. *See* Tex. Gov't Code § 552.352 (defining the misdemeanor crime of distribution of information "considered confidential under the terms of this chapter").

### C. Expressly

Even if our common law torts are "other law," and even if, somehow, the threat of the tort of battery declares some unknown information "confidential," the final requirement of section 552.022 is that the "other law" must "expressly" make the information "confidential." The Court does not address how it believes that the information at issue here is "expressly" confidential. Merriam–Webster's dictionary defines "express" as "directly, firmly, and explicitly stated." Merriam-Webster Dictionary, *available at* http://www.merriam-webster.com/dictionary/express (last visited June 21, 2011). The tort of battery is when a person "(a) ... acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Restatement (Second) of Torts § 13 (1965); *see also Bailey v. C.S.*, 12 S.W.3d 159, 162 (Tex.App.-Dallas 2000, no pet.) ("A person commits a battery if he intentionally or knowingly causes physical contact with another when he knows or should reasonably believe the other person will regard the contact as offensive or provocative."). Nowhere in the tort's elements, or in any of our cases, is it "directly, firmly, and explicitly stated" that battery protects information from disclosure. The tort concerns harmful or offensive intentional contact. The Court ignores this critical requirement of the statute limiting a court's ability to protect information from disclosure.

Simply put, common law battery is not "other law" under which the information at issue here is "expressly confidential." The Court oversteps legislated limits recognized in *Industrial Foundation* to interpret exceptions to disclosure under the PIA. For this reason, I do not join in the Court's opinion.

## III. Remand Is Appropriate

Although I cannot join the Court's opinion, I join its judgment that remand is appropriate. I believe DPS's and the trial court's improper reliance on the "special circumstances" exception, and the possibility of harm to public officials, warrants a remand in the interests of justice. I also believe that DPS should have the opportunity to argue that a specific exception to disclosure made by the Homeland Security Act should apply.

The Court relies on and builds upon the Attorney General's "special circumstances" test, which the Attorney General has applied numerous times in various letter rulings, in support of its holding today. However, this test, and its rulings, do not apply to the information at issue here nor to the legal theory upon which the Court relies in withholding the information.

The genesis of the test is a one-page letter ruling from 1974, that was later expanded in 1977. It was not a freestanding test to withhold information, but rather was used in determining whether information could be withheld as a "clearly unwarranted invasion of personal privacy," a separate, statutory exception to disclosure of non-core public information in the Act. Tex. Att'y Gen. ORD–54 (1974); Tex. Att'y Gen. ORD–169 (1977); *see also* Tex. Gov't Code § 552.102 (providing an exception for regular "public" information for information in a personnel file, "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"). In other words, the attorney general examined "special circumstances," such as an employee's specific history of being threatened, harassed, or stalked, to see if information in a state employee's personnel file should not be disclosed under what is now section 552.102 of the PIA. Rather than protecting more information from disclosure, the "special circumstances" test, as

initially articulated by the attorney general, actually required *more* information to be disclosed, because only if the "special circumstances" existed could an employee's personnel information (including his or her home address, phone number, and other personal information) be withheld. Tex. Att'y Gen. ORD–54 (1974); Tex. Att'y Gen. ORD–169 (1977).

In later attorney general opinions, though, the "special circumstances" test was not discussed in conjunction with section 552.102's "clearly unwarranted invasion of personal privacy" in employees' personnel files, but rather as a privacy exception or "other judicial decision" under section 552.101. *See, e.g.,* Tex. Att'y Gen. OR2004–10845. No party extensively discussed the evolution of this test in the attorney general's office from 1977 until today. However, it appears that the attorney general's basis for applying the "special circumstances" test to information not subject to disclosure was based on the application of the tort of public disclosure of private facts (discussed in *Industrial Foundation* and analyzed under the employment file exception, predecessor to section 552.102) as another "judicial decision" excluding information pursuant to section 552.101.

It also appears that the Attorney General has determined that section 5 52. 101 is "other law" for the purpose of deciding whether core public information can be withheld. I agree that the tort of public disclosure of private facts may be a "judicial decision," as it was extant at the time the PIA was promulgated, that could be the basis of an exclusion from disclosure under section 552.101 and may also be "other law" by which core public information is "expressly confidential" under section 552.022. However, section 552.101, in and of itself, cannot be "other law" to withhold core public information. To enact such a rule would thwart the Legisla-

ture's expressed intent that core public information is not subject to the Subchapter C exceptions, including section 552.101. This is further evidenced by the fact that the Legislature's new "special circumstances" exception, which appears to be similar to the Attorney General's so-called common law privacy "special circumstances" exception, is in Subchapter C, thus currently applying to "public information" but not core public information that must be disclosed pursuant to section 552.022. Therefore, the Attorney General's "special circumstances" exception should not apply to the information here.

The Attorney General's "special circumstances" test cannot apply in this situation. However, because the use of the test as an independent basis for withholding information was reasonably well established in a number of attorney general letter rulings for a number of years, because DPS and the trial court erroneously relied upon the test, and because of the serious personal safety concerns at issue in this case, I would remand in the interest of justice to allow DPS to argue any and all exceptions that are based on "other law," such as one based on Government Code section 418.176, the exception from the Homeland Security Act. *See* Tex.R.App. P. 60.3; *Low v. Henry*, 221 S.W.3d 609, 621 (Tex.2007) (remanding "to allow the parties to present evidence responsive to [the Court's] new guidelines").

On remand, the trial court should consider whether specific information in the vouchers raises serious security concerns and should be redacted. For example, in the sample submitted *in camera* to the Court, one cannot only identify at which specific hotels the Governor's security detail stayed and, inferentially, whether they stayed in the same hotel as the Governor, but also when the members of the detail arrived and departed from the foreign country. Other information in the vouchers, such as total amounts spent for lodging or costs of meals, may not present the same security concerns. The trial court should carefully consider the varying levels of concern for the different types of information in the vouchers.

## IV. Conclusion

There is legitimate concern about fashioning a rule that could allow those who want to do harm to government officials to gain information to help them do so through the government's own records. The rule the Court announces today—that it can fashion common law exceptions to disclosure of core public information—is based on a genuine concern to protect our public officials from physical harm and acts of terrorism, but it thwarts the Legislature's clear statement that it, not the courts, grants exceptions to the public's access to public information. There are many statutes and rules that make information "expressly confidential," but the judge-made tort of battery is not one, and we should guard against any court creating reasons to keep government information from its citizens. That policy-laden task, as emphasized in *Industrial Foundation*, belongs to the Legislature. Because the Court's rule opens the door to new judicially created exceptions to disclosure of core public information and weakens what was one of the strongest, most robust freedom of information statutes in the nation,[6] I respectfully cannot join the Court's opinion. But because I believe remand in the interest of justice is appropriate, I join the Court's judgment.

---

**6.** *See City of Dallas,* 304 S.W.3d at 395 n. 5 (Wainwright, J., dissenting) (citing 151 Cong. Rec. S1525–26 (Feb. 16, 2005) (statement of Senator John Cornyn)).