# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00516-CV

**Texas Department of Public Safety, Appellant**

**v.**

**Cox Texas Newspapers, LP and Hearst Newspapers, LLC, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. D-1-GN-07-004116, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING**

## O P I N I O N

This is a lawsuit brought pursuant to the Texas Public Information Act. The appellee newspapers filed suit against appellant, the Texas Department of Public Safety (DPS), seeking access to vouchers that relate to travel by the Texas Governor. The district court granted the relief requested by appellees. The DPS argues that the vouchers are confidential due to (1) the common-law right of privacy, based on special circumstances of an imminent threat of physical danger, and (2) a constitutional privacy interest under the Fourteenth Amendment of the United States Constitution, based on a substantial risk of serious bodily harm from a perceived likely threat. We affirm the judgment of the district court.

### Factual and Procedural Background

Appellee Cox Texas Newspapers, LP publishes six daily newspapers in Texas, including the *Austin American-Statesman*. On July 2, 2007, the DPS received a written request

from Cox Texas Newspapers, seeking "travel vouchers for Gov. Rick Perry's security detail for all trips out of state" during 2001 and from January through June of 2007. Appellee Hearst Newspapers, LLC publishes eleven newspapers in Texas, including the *San Antonio Express-News* and the *Houston Chronicle*. On August 8, 2007, the DPS received a written request from Hearst Newspapers seeking "access to or copies of travel vouchers for Gov. Rick Perry's security detail." The requested vouchers relate to the Governor Protective Detail division of the DPS, which provides security for the Governor, his family, and foreign dignitaries visiting Texas. Members of this division accompany the Governor when he travels. In order to receive reimbursement from the DPS for expenses incurred during such travels, a member of the division must submit a voucher to the DPS itemizing the expenses incurred. The DPS collects, assembles, and maintains these travel vouchers.

The DPS requested rulings from the Texas Attorney General that the information sought by appellees was excepted from required disclosure under the Public Information Act. *See* Tex. Gov't Code Ann. § 552.301(a), (b), (e) (West Supp. 2008). The attorney general determined that the information requested by appellees was confidential and, therefore, that the DPS must withhold the information in its entirety. *See* Tex. Att'y Gen. OR2007-11405 (2007).

Appellees filed suit against the DPS on November 29, 2007, seeking a writ of mandamus to compel the disclosure of the vouchers under the Public Information Act. *See* Tex. Gov't Code Ann. § 552.321 (West 2004); *Thomas v. Cornyn*, 71 S.W.3d 473, 481 (Tex. App.—Austin 2002, no pet.). Following a bench trial, the district court concluded that the information sought by appellees was not confidential. The district court entered judgment on

2

August 1, 2008, granting appellees' petition for writ of mandamus compelling the DPS to produce the vouchers to appellees as requested. On appeal, the DPS asserts: (1) the evidence is legally and factually insufficient to support the district court's finding that public disclosure of the vouchers would not "put any person in an imminent threat of physical danger," and therefore, the vouchers are confidential based on a "special circumstances" component of the common-law right of privacy; and (2) the evidence is legally and factually insufficient to support the district court's finding that public disclosure of the vouchers would not "create a substantial risk of serious bodily harm from a perceived likely threat," and therefore, the vouchers are confidential based on a constitutional privacy interest under the Fourteenth Amendment.

*Analysis*

Under the Public Information Act (the "PIA"), "public information" includes information that is "collected, assembled, or maintained . . . in connection with the transaction of official business" by a governmental body. Tex. Gov't Code Ann. § 552.002(a) (West 2004). The PIA does not authorize a governmental body's withholding of public information except as expressly provided. *Id.* § 552.006 (West 2004). The PIA is to be liberally construed in favor of granting requests for information. *Id.* § 552.001(b) (West 2004). As a general rule, information must be disclosed to the public. *See id.* § 552.021 (West 2004). While the PIA contains multiple exceptions to this general rule, *see id.* §§ 552.101-.148 (West 2004 & Supp. 2008), certain information is excepted from required disclosure only if it is "expressly confidential under other law," *see id.* § 552.022(a) (West 2004). This type of information includes "information in an account, voucher, or contract relating to the receipt or expenditure of public or other funds by a governmental body."

3

*Id.* § 552.022(a)(3). The parties agree that the vouchers requested by appellees contain this type of information. Therefore, for the vouchers to be withheld as requested by the DPS, some law other than the PIA must make them confidential. *See In re City of Georgetown*, 53 S.W.3d 328, 331 (Tex. 2001).

### *Common-law right of privacy*

The DPS argues that the vouchers are confidential based on the common-law right to privacy. *See Center for Econ. Justice v. American Ins. Ass'n*, 39 S.W.3d 337, 348 (Tex. App.—Austin 2001, no pet.) (common law serves as "other law" under section 552.022(a) of the PIA). The Texas Supreme Court has held that information is protected from disclosure under the PIA by a common-law right of privacy if: "(1) the information contains highly intimate or embarrassing facts the publication of which would be highly objectionable to a reasonable person, and (2) the information is not of legitimate concern to the public." *Industrial Found. of the S. v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 685 (Tex. 1976). The DPS concedes that the vouchers do not contain any "highly intimate or embarrassing facts." Therefore, in accordance with *Industrial Foundation*, the common-law right of privacy does not apply to the vouchers.

The DPS argues, however, that the common-law right of privacy incorporates a "special circumstances" exception, such that a governmental entity must withhold information if its disclosure would likely cause someone to face an imminent threat of physical danger. A "special circumstances" exception has appeared in open records decisions by the attorney general. *See* Tex. Att'y Gen. ORD-169 (1977); Tex. Att'y Gen. ORD-123 (1976). In Open Records Decision 169, the attorney general considered whether state employees' home addresses could be

4

withheld under the PIA's "personnel information" exception to disclosure. Tex. Att'y Gen. ORD-169, at 1; *see* Tex. Gov't Code Ann. § 552.102 (West 2004) (personnel information exception). The attorney general recognized that while an employee's home address generally "cannot be considered a highly intimate or embarrassing fact," it could be withheld in the case of "special circumstances," which would include "an imminent threat of physical danger," as opposed to "a generalized and speculative fear of harassment or retribution." Tex. Att'y Gen. ORD-169, at 6.

After the attorney general identified a "special circumstances" exception in the context of the PIA's "personnel information" provision, this Court held in *Hubert v. Harte-Hanks Texas Newspapers, Inc.*, 652 S.W.2d 546 (Tex. App.—Austin 1983, writ ref'd n.r.e.), that the supreme court's *Industrial Foundation* test applicable to the common-law right of privacy is equally applicable to the personnel information provision. *See* 652 S.W.2d at 550. This Court's holding in *Hubert* calls into question prior open records decisions by the attorney general that construed the personnel information provision without applying the *Industrial Foundation* test, such as Open Records Decision 169. Nonetheless, the attorney general has continued to apply its special-circumstances exception in its informal letter rulings:

> Ordinarily, information is protected by common law privacy only if (1) the information contains highly intimate or embarrassing facts, the release of which would be highly objectionable to a reasonable person, *and* (2) the information is not of legitimate concern to the public. *See Industrial Found.* [540 S.W.2d at] 685. However, information also may be withheld under section 552.101 in conjunction with common law privacy upon a showing of certain "special circumstances." *See* Open Records Decision No. 169 (1977).

5

Tex. Att'y Gen. OR2005-07052 (2005), at 6. The DPS asks this Court to follow the attorney general's analysis and adopt its special-circumstances exception.

We cannot adopt the attorney general's special-circumstances exception because it directly conflicts with Texas Supreme Court precedent. The supreme court in *Industrial Foundation* declared its two-part test to be the "sole criteria" for the disclosure of information to be deemed a wrongful publication of private information under common law. *See Industrial Found.*, 540 S.W.2d at 686; *Texas Comptroller of Pub. Accounts v. Attorney Gen. of Tex.*, 244 S.W.3d 629, 638 (Tex. App.—Austin 2008, pet. granted). We are required to follow the supreme court's precedent, *see Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 565 (Tex. App.—Austin 2004, no pet.) ("As an intermediate appellate court, we are not free to mold Texas law as we see fit but must instead follow the precedents of the Texas Supreme Court unless and until the high court overrules them or the Texas Legislature supersedes them by statute."), and decline the DPS's invitation to expand the boundaries of common law as established by the supreme court, *see Burgess v. El Paso Cancer Treatment Ctr.*, 881 S.W.2d 552, 556 (Tex. App.—El Paso 1994, writ denied) ("[C]hanges in the common law should be left to the Texas Legislature and our Supreme Court.").[1]

---

[1] The DPS also cites *N.W. Enterprises, Inc. v. City of Houston*, 27 F. Supp. 2d 754 (S.D. Tex. 1998), *aff'd in part, rev'd in part*, 352 F.3d 162 (5th Cir. 2003), to argue that *federal* courts have ordered information remain confidential under the PIA because of physical and other harm that might be caused if the information were released. In *N.W. Enterprises*, the information at issue was deemed confidential based on a "First Amendment right to free speech." 27 F. Supp. 2d at 773. The court addressed whether a governmental body could disclose contact information of entertainers who work in sexually oriented businesses. *See id.* at 841-43. The court determined that if such disclosure were required, some entertainers could experience "unwelcome harassment from aggressive suitors and overzealous opponents of sexually oriented businesses," causing the court to conclude that disclosure of the information would likely have a chilling effect on protected speech. *Id.* at 842-43. *N.W. Enterprises* does not affect our analysis, however, because the DPS does not allege that any issue of protected speech under the First Amendment is involved in this case.

6

Given the DPS's concession that the first factor of the *Industrial Foundation* test for wrongful publication of private information is not met, the vouchers cannot be withheld based on the common-law right of privacy.[2]

*Constitutional right of privacy*

The DPS next argues that the travel vouchers must be kept confidential based on a right of privacy under the United States Constitution. According to the DPS, the Fourteenth Amendment prohibits the DPS from disclosing information if disclosure would create a substantial risk of serious bodily harm from a perceived likely threat, unless a legitimate state interest in disclosing the information outweighs the threat to a privacy interest.

A right of privacy is not explicitly mentioned in the Constitution. However, the Supreme Court has held that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Due Process Clause of the Fourteenth Amendment. *See Carey v. Population Servs. Int'l*, 431 U.S. 678, 684 (1977). The cases addressing the constitutional right of privacy generally involve two different kinds of interests. *See Whalen v. Roe*, 429 U.S. 589, 598-99 (1977). One is an individual's interest in independence in making certain kinds of decisions, including matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. *See id.* at 599-600, 600 n.26. The other is the individual's interest in

---

[2] The DPS contends that the evidence is legally and factually insufficient to support the district court's finding of fact that public disclosure of the information in the vouchers "would not put any person in an imminent threat of physical danger." Having concluded that there is no "special circumstances" exception to the *Industrial Foundation* test, we need not consider the DPS's evidentiary arguments regarding this finding.

avoiding disclosure of personal matters. *See id.* at 599. The latter is at issue here. This aspect, which the Texas Supreme Court has referred to as "disclosural privacy," encompasses the ability of individuals to determine for themselves when, how, and to what extent information about them is communicated to others. *Industrial Found.*, 540 S.W.2d at 679. It is clear, however, that not every publication of personal information about an individual constitutes an invasion of a constitutionally protected zone of privacy. *Id.* at 680.

In its attempt to place the travel vouchers within a constitutionally protected zone of privacy, the DPS relies exclusively on the Sixth Circuit's opinion in *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998). In *Kallstrom*, the plaintiffs were undercover police officers who were actively involved in the drug conspiracy investigation of a violent gang called the Short North Posse, and in the prosecution of several gang members on the charges that arose from the investigation. 136 F.3d at 1059. In accordance with Ohio open records law, the City released the plaintiffs' personnel records—which allegedly included their current addresses and phone numbers, copies of their drivers licenses, and the names, addresses, and phone numbers of immediate family members[3]—to the gang members' defense counsel, who may have passed the information on to the gang members themselves. *See id.* The plaintiffs contended that the dissemination of their personal information violated their right to privacy as guaranteed by the Due Process Clause of the Fourteenth Amendment. *See id.* at 1060. The Sixth Circuit agreed, holding that the plaintiffs'

---

[3] On remand, the Ohio district court revised its findings of fact after receiving copies of the personnel records released by the City and determining that, contrary to the allegations in the plaintiffs' affidavits, most of the personal information had actually been redacted prior to disclosure of the records. *See Kallstrom v. City of Columbus*, 165 F. Supp. 2d 686, 700-01 (S.D. Ohio 2001).

privacy interests implicated a fundamental liberty interest, specifically their interest in preserving their personal security and bodily integrity. *See id.* at 1062. According to the Sixth Circuit, the release of information rises to constitutional dimensions "where the release of private information places an individual at substantial risk of serious bodily harm, possibly even death, from a perceived likely threat." *Id.* at 1064.

The DPS contends that, as in *Kallstrom*, release of the travel vouchers would place the Governor, his family and security detail, and others traveling with the Governor at substantial risk of serious bodily harm from a perceived likely threat. At trial, Lt. David Armistead, the head of the Governor Protective Detail division, testified regarding the "magnitude and numerous threats" that are directed at the Governor and his family. According to Armistead, individuals seeking to harm the Governor or a member of his travel group could use the information contained in the vouchers to their tactical advantage by finding "consistencies and patterns in movements and methods of movements." Such information could include the number of officers that travel, how far in advance they arrive, and the identities of hotels, other places frequented, and transportation used.

We note that no Texas court has followed *Kallstrom* or determined that constitutional privacy interests would apply in the type of circumstances at issue in that case.[4] We need not determine whether the *Kallstrom* test should be followed by Texas courts, however, because even if we were to apply the Sixth Circuit's approach in this case, we would conclude that the evidence

[4] The Sixth Circuit itself recently observed that "the *Kallstrom* court broke new ground," and that its holding "is virtually unique among courts of appeals." *Barber v. Overton*, 496 F.3d 449, 455 (6th Cir. 2007).

is legally and factually sufficient to support the district court's finding that public disclosure of the vouchers "would not . . . create a substantial risk of serious bodily harm from a reasonably perceived likely threat."

The DPS, as the governmental body seeking to withhold information, bears the burden of establishing that the requested information falls within an exception to disclosure under the PIA. *See Thomas*, 71 S.W.3d at 488. For a legal sufficiency challenge, we review the evidence in the light favorable to the verdict, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We will sustain the DPS's point on appeal based on legal sufficiency only if the evidence conclusively establishes, as a matter of law, a substantial risk of serious bodily harm from a reasonably perceived likely threat. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). For a factual sufficiency challenge, we consider and weigh all the evidence in the record, both supporting and against the finding, to decide whether the judgment should be set aside. *Id.* at 242. In reviewing appellants' factual sufficiency challenge, we will set aside the judgment only if the evidence is so weak or the district court's finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

The Sixth Circuit revisited the *Kallstrom* holding in 2007 and concluded that "*Kallstrom* created a narrowly tailored right, limited to circumstances where the information disclosed was particularly sensitive and the persons to whom it was disclosed were particularly dangerous *vis-a-vis the plaintiffs*." *Barber v. Overton*, 496 F.3d 449, 456 (6th Cir. 2007). Thus, the

10

Sixth Circuit interpreted *Kallstrom* to require that, for information to be protected by a constitutional right of privacy based on substantial risk of serious bodily harm from a perceived likely threat, there must be reason to fear retaliation from the persons to whom the information would be disclosed. *See id.* In *Kallstrom*, for example, the information at issue included current addresses of the plaintiffs and their family members, and it was disclosed to an attorney who "appear[ed] to have passed [it] on" to several of the members of a violent gang during the criminal trial in which the plaintiffs were testifying against the members. *Kallstrom*, 136 F.3d at 1059. Consequently, for the DPS to succeed in its evidentiary challenge, there must be similar evidence that would conclusively establish the existence of a substantial risk of serious bodily harm from a perceived likely threat, or that evidence of such a risk is so overwhelming as to make a finding of no such risk clearly wrong and unjust.

The evidence in the record does not satisfy this burden. The DPS did not put on evidence of a substantial risk from a "perceived likely threat." Rather, the evidence was to the effect that disclosure of the vouchers at all could result in their falling into the hands of some currently unknown person or persons who may turn out to be a threat. Armistead testified that "my difficulty, in my understanding of open records requests, is that goes to anybody, anybody that wants to make that request." The DPS's concern is directed at future, potential, and unknown requestors and recipients of the same information who might turn out to be threats. Such a concern—relating to unknown and speculative threats—cannot constitute a "perceived likely threat" in accordance with the Sixth Circuit case law on which the DPS relies for its constitutional privacy argument. Therefore, even if the *Kallstrom* standard accurately reflects the current state of the law as to the constitutional parameters of privacy in this context, we conclude that the evidence is legally and

11

factually sufficient to support the district court's finding that public disclosure of the vouchers would not create a substantial risk of serious bodily harm from a perceived likely threat.

Our conclusion does not mean that we attach little significance to the right of privacy or the DPS's concern for the safety of the Governor and his travel group. We simply hold that the DPS's interest in nondisclosure of travel vouchers based on safety concerns does not implicate constitutional privacy interests under the current state of the law. Whether the privacy interests at issue here *should* merit protection under the PIA is a question for the legislature.

### *Conclusion*

The DPS has failed to establish that the information contained in the Governor Protective Detail officers' travel vouchers is confidential under either a common-law right of privacy or a constitutional right of privacy. We affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: May 29, 2009

12