IN THE SUPREME COURT OF TEXAS
 
════════════
No. 
09-0530
════════════
 
Texas Department of Public 
Safety, Petitioner,
 
v.
 
Cox Texas Newspapers, L.P., 
and Hearst Newspapers, L.L.C., Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Third 
District of Texas
════════════════════════════════════════════════════
 
 
Argued September 15, 2010
 
                        

 
            
Chief Justice Jefferson 
delivered the opinion of the Court, joined by Justice Hecht, Justice Green, Justice 
Guzman, and Justice 
Lehrmann.
 
            
Justice Wainwright 
delivered a concurring opinion, joined by Justice Johnson.
            
Justice Medina and Justice Willett did not participate in 
the decision.
            
Our common law protects from public disclosure highly intimate or 
embarrassing facts. We must decide whether it also protects information that 
substantially threatens physical harm. We conclude that it does. Both sides 
raise important questions, not just about safety but also about the public’s 
right to know how the government spends taxpayer money. Those issues could not 
have been fully litigated under the standard that prevailed before today's 
decision. Accordingly, we reverse the court of appeals’ judgment and remand the 
case to the trial court for further proceedings.
I. 
Background
            
In separate requests, two reporters representing three newspapers asked 
the Department of Public Safety for travel vouchers from Governor Rick Perry’s 
security detail. One request was limited to the Governor’s out-of-state trips in 
2001 and 2007; the other was not confined to a specific period of travel. 
Believing all of the documents to be excepted from 
disclosure under the Public Information Act (specifically Government Code 
section 552.101), DPS sought a ruling from the Attorney General’s 
office.
            
DPS noted that it is responsible for staffing the governor’s protective 
detail and that it does not publicly discuss security practices or the identity 
or numbers of officers so assigned. DPS offered to release aggregated expense 
information, warning that releasing the vouchers themselves would “necessarily 
reveal the number of officers who traveled with the governor and his family,” 
data that “would be valuable information for someone who intended to cause [the 
governor] harm.”
            
 Based solely on DPS’s letter and inspection of a subset of the 
responsive documents, the Attorney General determined that release of the 
information would place the governor in imminent threat of physical danger. 
Accordingly, the Attorney General concluded that the information fell within a 
“special circumstances” aspect of common law privacy that required DPS to 
withhold the submitted information in its entirety under Government Code section 
552.101.[1] Cox and Hearst, publishers of the 
newspapers in question, sued DPS, seeking a writ of mandamus to compel complete 
disclosure. See Tex. Gov’t Code § 
552.321(a). After a bench trial, the trial court found that 
public disclosure of the information in the vouchers would not put any person in 
imminent threat of physical danger or create a substantial risk of serious 
bodily harm from a reasonably perceived likely threat. The trial court ordered 
the clerk to issue a writ of mandamus compelling DPS to produce the vouchers in 
their entirety.
            
The court of appeals affirmed. 287 S.W.3d 390, 
398. It held that the Attorney General’s “special circumstances” 
exception conflicted with Industrial Foundation of the South v. Texas 
Industrial Accident Board, 540 S.W.2d 668, 685 (Tex. 1976). Id. at 394. According to the court of appeals, 
Industrial Foundation “declared its two-part test to be the ‘sole 
criteria’ for the disclosure of information to be deemed a wrongful publication 
of private information under common law.” Id. (quoting 
Industrial Foundation, 540 S.W.2d at 686). Because DPS conceded 
that the first prong of that test (that the information contains highly intimate 
or embarrassing facts) had not been satisfied, the court held that the vouchers 
could not be withheld based on the common law right of privacy. Id. at 395. The court also rejected DPS’s claim that 
the Fourteenth Amendment to the United States Constitution barred disclosure of 
information that would create a substantial risk of serious bodily harm from a 
perceived likely threat. Id. at 398. The court 
observed that “[w]hether the privacy interests at 
issue here should merit protection under the PIA is a question for the 
legislature.” Id.
            
We granted the petition for review to examine whether the public’s right 
to information is subject to reasonable limitations when its production may lead 
to physical harm.[2] 53 Tex. Sup. Ct. 
J. 1023 (Aug. 20, 2010). DPS asserts that the vouchers are confidential under 
the common law and under Government Code section 418.176(a)(2).[3] We address each argument in 
turn.
II. Does “other law” include a 
common law right to be free from physical harm?
 
            
The PIA guarantees access to public information, subject to certain 
exceptions. See generally Tex. 
Gov’t Code ch. 552. Those exceptions 
embrace the understanding that the public’s right to know is tempered by the 
individual and other interests at stake in disclosing that information. See 
generally Tex. Gov’t Code ch. 552, subch. C. In 1999, the Legislature 
excluded certain categories of public information from the exceptions. See 
id. § 552.022. This core public information is currently[4] protected from disclosure only if it is 
“‘expressly confidential under other law,’ meaning law other than Chapter 
552 of the Government Code, which is the Public Information Act.” In re City 
of Georgetown, 53 S.W.3d 328, 331 (Tex. 2001) (quoting Tex. Gov’t Code § 552.022(a)). “Other law” 
includes other statutes, judicial decisions, and rules promulgated by the 
judiciary. Id. at 332. “A law does not have to 
use the word ‘confidential’ to expressly impose confidentiality.” Id. at 334.
 The parties agree that the vouchers 
contain core public information.[5] See Tex. Gov’t Code § 552.022 (a)(3) (including “information in an account, voucher, or 
contract relating to the receipt or expenditure of public or other funds by a 
governmental body”). For this reason, that information is presently unaffected 
by the Legislature’s passage, five days after the court of appeals’ decision, of 
an amendment excepting public information from disclosure “if, under the 
specific circumstances pertaining to the [government] employee or officer, 
disclosure of the information would subject the employee or officer to a 
substantial threat of physical harm.” Act of June 3, 2009, 
81st Leg., R.S., ch. 283, § 4, 2009 Tex. Gen. Laws 742 
(codified at Tex. Gov’t Code § 552.151). Because this 
exception is in the PIA, it does not currently apply to core public 
information.[6] Tex. Gov’t Code § 552.022(a).
            
We turn, then, to DPS’s argument that “other law” includes a common law 
right to be free from physical harm. DPS urges an exception for cases in which 
there is an imminent threat of physical danger. DPS asserts that if the common 
law protects personal privacy, it must logically protect physical safety as 
well. Ensuring the physical safety of its citizens, 
says DPS, is the “primary concern of every government,”[7] and preventing disclosure that would 
threaten physical safety is deeply rooted in the common law. See, 
e.g., Fisher v. Carrousel Motor Hotel, Inc., 424 S.W.2d 627, 629 
(Tex. 1967) (observing that “‘[t]he interest in freedom from intentional and 
unpermitted contacts with the plaintiff’s person is protected by an action for 
the tort commonly called battery’” (quoting William L. Prosser, Law of Torts 32 (3d 
ed. 1964))).
            
Freedom from physical harm is indeed a hallmark of our common law. One of 
our earliest reported cases involving battery was decided by the Supreme Court 
of the Republic of Texas. Eli Williams sued Jesse Benton for assault and 
battery. Benton v. Williams, Dallam 496, 496 (Tex. 
1843). Benton filed a plea asserting that he should not have to answer 
the complaint because “Williams [was] of African descent, and not entitled by 
law to maintain his action.” Id. at 496-97. The 
Court rejected that contention, even though the constitution at that time 
provided that the descendants of Africans were not entitled to the rights of 
citizens and “shall not be permitted to remain permanently in the republic 
without the consent of congress.” Id. at 497. 
The Court held that insulating Benton from Williams’s 
battery claim would be “against law, contrary to the spirit of our institutions, 
and in violation of the dictates of common humanity.” Id. The Court 
affirmed the trial court’s judgment against Benton. Id.
            
Our courts have, since then, consistently protected individuals’ right to 
be free from physical harm.[8] Blackstone described three “absolute 
rights,” one of which was “[t]he right of personal security,” consisting of “a 
person’s legal and uninterrupted enjoyment of his life, his limbs, his body, his 
health, and his reputation.” 1 William Blackstone, Commentaries *125 
(1769). The common law’s recognition of an action for battery emerged as 
a means of “keep[ing] the peace by affording a 
substitute for private retribution,”[9] and we have recognized common law battery 
claims for more than a century. See, e.g., Sargent 
v. Carnes, 19 S.W. 378, 378 (Tex. 1892) (affirming judgment on plaintiff’s 
assault and battery claim). Protection from physical harm is thus more firmly 
entrenched in our common law than the right of privacy, a relative newcomer. 
W. Page Keeton, et al., The Law of Torts 
849 (5th ed. 1984)(noting that “[p]rior to the year 1890, no English or American court ever had 
granted relief expressly based upon the invasion [of the right of privacy]”). 
Indeed, we did not formally recognize the privacy tort until 1973, although our 
courts of civil appeals had hinted at it previously.[10]
            
Nonetheless, thirty-five years ago, we held that the common law privacy 
protection exempted documents from disclosure under the PIA. Indus. 
Found., 540 S.W.2d at 686. We have never addressed 
whether the common law right to be free from physical harm applies as well. We 
conclude that it does.
            
The Legislature has recognized the importance of protecting physical 
safety, notwithstanding the mandate that courts construe the PIA in favor of 
disclosure. See Tex. Gov’t Code § 
552.001(b). Several PIA exceptions are grounded in a 
concern for physical safety, and the Legislature’s swift passage of an exception 
for information that would pose a “substantial threat of physical harm” confirms 
the primacy of this interest.[11]
            
Additionally, since the 1970s, the attorney general has applied a 
“special circumstances” exception to disclosure in over 230 cases. Often, these 
special circumstances included situations in which disclosure would place 
individuals in danger of physical harm.[12] The Attorney General has described the 
exception as covering a “very narrow set of situations in which release of the 
information”[13] would cause someone to face “an imminent 
threat of physical danger.” Tex. Att’y Gen. ORD1977-0169, at 6. It must be “more than 
a desire for privacy or a generalized fear of harassment or retribution.” 
Id.
            
The court of appeals held that the Attorney General’s “special 
circumstances” exception conflicted with Industrial Foundation, in which 
we said that the “sole criteria” for determining whether information was exempt 
from disclosure as “confidential by judicial decision” was whether the 
information was of legitimate public concern and whether its publication would 
be highly objectionable to a reasonable person. 287 S.W.3d at 
394 (citing Industrial Foundation, 540 S.W.2d at 686). That is an 
accurate statement for assessing matters involving that branch of the 
invasion-of-privacy tort (the only exception at issue in Industrial 
Foundation), but not for other matters that are confidential under judicial 
decision. See, e.g., Ctr. for Econ. Justice v. Am. Ins. Ass’n, 39 S.W.3d 337, 348 (Tex. App.—Austin 2001, no 
pet.) (determining that because the 
“[c]ommon law protects information that meets the 
traditional six-factor test for trade-secret protection,” information was 
excepted from disclosure under the PIA). The court of appeals’ holding is 
understandable, given that the Attorney General has characterized the “special 
circumstances” exception as falling under the common law privacy umbrella. 
See, e.g., Tex. Att’y Gen. OR2005-07052, at 6 
(noting that “information also may be withheld under section 552.101 in 
conjunction with common law privacy upon a showing of certain ‘special 
circumstances’”). But freedom from physical harm is an independent interest 
protected under law, untethered to the right of 
privacy.
            
The privacy interest protects against four distinct kinds of invasions 
(intrusion upon seclusion, public disclosure of private facts, false light 
publicity, and appropriation); physical harm is not among them.[14] Keeton, The Law of Torts 40, 851 
(noting that privacy is “not one tort, but a complex of four”). We have 
characterized privacy as “the right of an individual to be left alone, to live a 
life of seclusion, to be free from unwarranted publicity.” Billings v. 
Atkinson, 489 S.W.2d 858, 859 (Tex. 1973) (citing 77 C.J.S. Right of Privacy § 1). By contrast, the common law right to 
be free from physical harm is an interest in personal integrity, distinct from 
that covered by the privacy interest. Keeton, The Law of Torts 40.[15] It is integral to a civil society. 
Although mischaracterized as a privacy related exception, the “special 
circumstances” doctrine protects the right we have long recognized at common 
law.
            
Both the legislative and executive branches have recognized that, as 
valuable as the right to public information is, a person’s physical safety 
supersedes it. Those branches are not alone. Our common law protects—and has 
always protected—that interest, making such information confidential. We must 
decide, then, the appropriate standard for assessing whether disclosure would 
violate that interest. While we are not bound by the Legislature’s policy 
decisions when we consider protections afforded by the common law, “the 
boundaries the Legislature has drawn do inform our decision.” Ford Motor Co. 
v. Miles, 967 S.W.2d 377, 383 (Tex. 1998); see also Austin v. Healthtrust, Inc., 967 S.W.2d 400, 403 (Tex. 1998). We 
conclude that the “substantial threat of physical harm” standard enunciated by 
the Legislature appropriately describes the interest protected under the common 
law, and information may be withheld if disclosure would create a substantial 
threat of physical harm. See Tex. 
Gov’t Code § 
552.151. We next examine that standard in light of the 
record produced at trial.
            
The trial court heard testimony from witnesses and reviewed the relevant 
documents and other exhibits. Although DPS proferred 
categories of lump sum expenses, showing amounts spent on airfare, lodging, 
meals, car rental, and related matters, it argued that disclosing the vouchers 
themselves would give those intent on harming the 
governor the means to accomplish that goal. DPS contended that the information 
revealed travel patterns, the number and placement of DPS officers on the 
detail, and how far in advance officers visit a location prior to the governor’s 
arrival. The publishers presented evidence that the itemized vouchers and 
related documents disclose more information (and are more valuable to taxpayers, 
who fund the travel) than do line items with lump sum totals. The trial court 
concluded, categorically, that “public disclosure of the information in the 
vouchers requested by Cox and Hearst would not put any person in an imminent 
threat of physical danger or create a substantial risk of serious bodily harm 
from a reasonably perceived likely threat”—the standard for the Attorney 
General’s “special circumstances” test and the constitutional exception urged by 
DPS, respectively. This determination is close, but not identical, to the 
standard we announce today for the common law right of physical 
safety.
            
We have remanded a case to the trial court when we have changed our 
precedent or when the applicable law has otherwise evolved between the time of 
trial and the disposition of the appeal. See, e.g., Twyman v. Twyman, 855 S.W.2d 
619, 626 (Tex. 1993) (remand in interest of justice because case was tried on 
legal theory overruled by Court); Caller-Times Publ'g Co., Inc. v. Triad Commc’ns, Inc., 826 S.W.2d 576, 588 (Tex. 1992) (remand 
in interest of justice because Court announced new liability standard). We have 
also remanded for a trial court to determine “in light of [our] opinion, whether 
any of the information should be withheld from disclosure because 
confidential.” Indus. Found., 540 S.W.2d at 686. 
Here, our decision recognizes, for the first time, a common law physical safety 
exception to the PIA. And even though the interest protected under that 
exception is well-established in our law, we have never before addressed whether 
or how it applies to the PIA. We conclude that a remand is 
appropriate.
            
On remand, the trial court must closely examine each of the disputed 
documents. DPS is likely correct in one sense: disclosure of some of the 
information in the vouchers may create a substantial threat of physical harm 
because it reveals specific details about the number of officers assigned to 
protect the governor, their general location in relation to him, and their dates 
of travel. Indeed, the vouchers divulge the number of officers the DPS deemed 
necessary for the governor’s security, the specific location (hotel and room 
number) where the officers resided when providing that security, and the identity of each officer the Department 
assigned to the governor’s protection. Because the past is prologue, at least 
when it reveals protocol DPS has implemented for ensuring the safety of 
government officials, we cannot agree that information from prior trips could 
not be used to inflict future harm.
            
But this may not justify withholding all but the ultimate dollar figure 
for trips abroad, as DPS proposes. In this respect, the publishers’ request has 
merit: the documents themselves provide a more complete picture of how taxpayer 
money is spent than do the general categories and totals produced by DPS. This 
fact was not lost on the Legislature, which categorized certain information in 
vouchers as core public information. See Tex. Gov’t Code § 552.022(a). And we agree 
with the trial court that the public has a legitimate interest in how public 
money is spent on official state business. The dividing line between disclosure 
and restraint must be determined by proof. To the extent DPS can show, with 
detailed evidence or expert testimony, that revelation substantially threatens 
harm—as it has with respect to the number of guards protecting the governor—then 
the information at issue may be withheld. A certain amount of deference must be 
afforded DPS officers and other law enforcement experts about the probability of 
harm, although vague assertions of risk will not carry the day. But the public’s 
right to “complete information”[16] must yield when disclosure of that 
information would substantially threaten physical harm. On remand, the trial 
court must ascertain, under this standard, what information may be confidential 
and what must be disclosed. Accordingly, we remand the case for a new 
trial.
            
A brief word in response to the concurrence. The 
concurrence says our holding would “establish judge-made exceptions to the PIA’s 
required disclosure of information to the public, contradicting the unanimous 
determination in our precedent, Industrial Foundation of the South v. Texas 
Industrial Accident Board.” __ S.W.3d at ___. But Industrial Foundation 
recognized that the PIA is subject to the common law and itself adopted a 
“judge-made” exception to disclosure: the right of privacy. Indus. 
Found., 540 S.W.2d at 683 (holding that right of privacy acknowledged in 
Billings v. Atkinson was “the type of information which the Legislature 
intended to exempt from mandatory disclosure” under the PIA provision excepting 
matters confidential by judicial decision). We squarely held in In re Georgetown (a case 
involving core public information) that “other law” included not just statutes 
and rules, but “judicial decisions.” Georgetown, 53 
S.W.3d at 332. To reach that holding, we relied on a United States 
Supreme Court decision that concluded the phrase “all other law,” by itself, 
“indicates no limitation” and did not allow any distinction “between positive 
enactments and common-law rules of liability.” Norfolk & W. Ry. Co. v. 
Am. Train Dispatchers Ass’n, 499 U.S. 117, 128-29 
(1991), quoted in Georgetown, 53 S.W.3d at 333. The concurrence’s 
position is not unlike the Georgetown dissent’s, 
a position we rejected then. We reject it again today. Compare ___ S.W.3d 
at ___ (suggesting that “‘other law’ must mean other statutory law where the 
Legislature has declared certain information confidential”), with 
Georgetown, 53 S.W.3d at 339 (Abbott, J., dissenting) (suggesting that only 
the Legislature could promulgate laws, so that rules of procedure could not be 
“other law”).
            
The concurrence argues that because the information itself may not 
implicate privacy concerns, it cannot be protected from disclosure as “expressly 
confidential under other law.” Tex. 
Gov’t Code § 
552.022. But information does not exist in a vacuum. When 
disclosure carries with it a serious risk of bodily harm, we cannot ignore those 
consequences when deciding whether common law protections apply. Cf. U.S. 
Dep’t of State v. Ray, 502 U.S. 164, 177 (1991) (considering retaliatory 
action that would occur if information was disclosed).[17] Our common law protects individuals from 
physical harm, and, consistent with the PIA,[1][8] that protection extends to the 
disclosure of information that substantially threatens such 
harm.
III. Are the 
vouchers confidential under Government Code section 418.176?
            
Finally, DPS contends the documents are exempt from disclosure under 
Government Code section 418.176. That statute, passed in 2003,[1][9] makes certain information relating to 
emergency response providers confidential. The law provides, in pertinent 
part:
 
Information is confidential if the information is 
collected, assembled, or maintained by or for a governmental entity for the 
purpose of preventing, detecting, responding to, or investigating an act of 
terrorism or related criminal activity and:
 
 (1) relates to the staffing requirements 
of an emergency response provider, including a law enforcement agency, a 
fire-fighting agency, or an emergency services agency;
 
 (2) relates to a 
tactical plan of the provider; or
 
 (3) consists of 
a list or compilation of pager or telephone numbers, including mobile and 
cellular telephone numbers, of the provider.
 
Tex. Gov’t Code § 
418.176(a).
            
DPS contends that section 418.176 is “other law” making the vouchers 
confidential. See id. 552.101. Cox and Hearst argue that the vouchers do 
not meet section 418.176's requirements and, moreover, that DPS waived the issue 
by failing to raise it in the trial court and the court of appeals. Because we 
are remanding for a new trial, DPS may pursue this argument in the trial court 
in the first instance. Cf. Kallam v. Boyd, 232 
S.W.3d 774, 776 (Tex. 2007) (deferring decision on issue until it had been fully 
litigated below “‘so that we will have the benefit of developed arguments on 
both sides and lower court opinions squarely addressing the question’”(quoting Yee v. City of Escondido, 503 U.S. 519, 538 
(1992))).
IV. 
Conclusion
            
We reverse the court of appeals’ judgment and remand the case to the 
trial court for further proceedings consistent with this opinion. Tex. R. App. P. 60.2 (d).
 
 
                                                                                                                                                
            
________________________________
                                                                                                                                                            
Wallace B. Jefferson
                                                                                                                                                            
Chief Justice
 
OPINION DELIVERED: July 1, 
2011






[1] Twice 
before, the Attorney General ruled that similar vouchers had to be disclosed. 
See Tex. Att’y Gen. OR2004-4723; Tex. Att’y Gen. OR2002-0605. In those instances, however, the 
only exception DPS urged was Government Code section 552.108, which protects 
certain law enforcement information. See Tex. Gov’t Code § 552.108. Because he believed 
that exception to be discretionary, however, the Attorney General ruled that it 
could not be considered in conjunction with section 552.022. See id. § 
552.022 (making certain information in vouchers public unless expressly 
confidential under “other law”). DPS did not appeal either of those 
rulings.

[2] The 
Freedom of Information Foundation of Texas submitted an amicus curiae brief in 
support of Cox and Hearst.
 

[3] DPS no 
longer makes an argument based on a constitutional right of privacy.

[4] The 
Legislature has since amended section 552.022(a). Effective September 1, 2011, 
core public information may be withheld if it is confidential under either the 
PIA or other law. See Act of May 30, 2011, 82nd Leg., R.S., S.B. 602, § 2 
(to be codified at Tex. Gov’t Code § 
552.022(a)).

[5] The 
parties do not address, and we do not decide, what voucher information is “core” 
and what is not.

[6] The 
Legislature recently passed (although the Governor has not yet acted on) an 
amendment making vouchers confidential, but that amendment would not apply to 
the vouchers at issue in this case. Act introduced May 31, 2011, 82nd Leg., 1st 
C.S., S.B. 1, art. 79A (to be codified at Tex. Gov’t Code ch. 660).

[7] 
United States v. Salerno, 481 U.S. 739, 755 (1987).

[8] See, 
e.g., Operation Rescue-Nat’l v. Planned Parenthood of Houston & Se. 
Tex., Inc., 975 S.W.2d 546, 564 (Tex. 1998) (holding that “protecting the 
health and safety of clinic patients is a compelling state interest justifying 
restrictions on the demonstrations”); see also Restatement (Third) of Torts: Liability for 
Physical & Emotional Harm § 5 (stating that “[a]n actor who 
intentionally causes physical harm is subject to liability for that harm”); 
cf. G., C. & S. F. R’y v. Styron, 2 Posey 
275, 276-77 (Tex. Comm’n App. 1883) (not precedential) 
(noting that the common law recognized actions for injuries “‘to the absolute 
rights of persons, as for assaults, batteries, wounding, injuries to the 
health, liberty and reputation’” (quoting 1 Chitty on Pleadings 60)(emphasis 
added)).

[9] W. Page Keeton, et al., The Law of Torts 
41 (5th ed. 1984).

[10] See 
Billings v. Atkinson, 489 S.W.2d 858, 860 (Tex. 1973) (holding, for the 
first time, that “an unwarranted invasion of the right of privacy constitutes a 
legal injury for which a remedy will be granted”); Milner v. Red River Valley 
Pub. Co., 249 S.W.2d 227, 229 
(Tex. Civ. App.—Dallas 1952, no writ) (refusing to allow recovery for violation 
of right of privacy, because it was “not . . . recognized under the common law, 
as it existed when we adopted it,” but noting that other actions (such as 
penalties for libel and eavesdropping) provided some 
protection).

[11] See, e.g., Tex. Gov’t Code §§ 552.108 (exempting 
information held by a law enforcement agency or prosecutor if it involves a 
threat against a peace officer), 552.1176 (making home address, phone number, 
and social security number of Texas lawyers and judges confidential), 552.119 
(making photographs of peace officers confidential), 552.127 (excepting 
identifying information from participants in neighborhood crime watch 
organizations), 552.151 (excepting certain information from disclosure if it 
would pose a “substantial threat of physical harm”); see also House Comm. 
on State Affairs, Bill Analysis, Tex. H.B. 1237, 80th Leg., R.S. (2007) (noting 
that release of attorney personal information may “subject attorneys including 
current and former state and federal judges and prosecutors and their family 
members to harm relating to their personal safety or possible identity theft”); 
House Comm. on State Affairs, Bill Analysis, Tex. H.B. 273, 75th Leg., R.S. 
(1997) (commenting on “threats and acts of retaliation against the members of 
[neighborhood crime watch organizations]”); House Comm. for Public Safety, Bill 
Analysis, Tex. H.B. 474, 70th Leg., R.S. (1987) (noting that routine release of 
peace-officer photographs endangers officers’ lives).

[12] 
See, e.g., Tex. Att’y Gen. OR2008-03289 
(holding that home address, telephone number, and other identifying information 
relating to a Dallas Area Rapid Transit employee fell within the special 
circumstances exception, as information was requested by a former employee who 
had threatened that individual); Tex. Att’y Gen. 
OR2008-01570 (determining that special circumstances justified withholding 
information, as city showed that former employee had made threatening statements 
to city staff); Tex. Att’y Gen. 
OR2004-10845 (holding that special circumstances justified withholding 
identity of alleged crime victim due to potential threat to victim’s safety); 
Tex. Att’y Gen. ORD1977-0169 (holding that employees’ 
addresses could be withheld because employees showed that their lives would be 
endangered if the information was disclosed).

[13] Tex. Att’y Gen. 
OR2004-10845, at 2.

[14] As we 
noted in Industrial Foundation, the United States Supreme Court has also 
recognized a constitutional right of personal privacy in certain situations. 
Indus. Found. of the South v. Tex. Indus. Accident 
Bd., 540 S.W.2d 668, 679 (Tex. 1976).

[15] See 
also Fisher v. Carrousel Motor Hotel, Inc., 424 S.W.2d 627, 629 (Tex. 1967) 
(describing battery as protecting “[t]he plaintiff’s interest in the integrity 
of his person”) (quoting Prosser, Law of 
Torts 32 (3d ed. 1964)).

[16] Tex. Gov’t Code § 552.001(a).

[17] See 
also Michael Hoefges et al., Privacy Rights 
Versus FOIA Disclosure Policy: The “Uses and Effects” 
Double Standard in Access to Personally-Identifiable Information in Government 
Records, 12 Wm. & Mary Bill Rts. 
J. 1, 7 (2003) (noting that “the [Supreme] Court considers derivative 
uses and secondary effects of disclosure on the privacy side as a matter of 
course”).

[18] Tex. Gov’t Code § 552.022(a).

[19] See 
Act of June 2, 2003, 78th Leg., R.S., ch. 1312, § 
3, 2003 Tex. Gen. Laws 4809, 4813.